UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BARBARA BOSTOCK,<br><br>      Plaintiff,<br><br>v.<br><br>AURORA LOAN SERVICES, LLC, SAFECO INSURANCE CO. OF ILLINOIS, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and JOHN AND JANE DOES 1-10,<br><br>      Defendants. | Case No. 1:14-cv-00329-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

   Pending before the Court is Defendant Safeco Insurance Co. of Illinois' Motion for Summary Judgment. (Dkt. 41). Additionally, Plaintiff Barbara Bostock has moved for additional time to respond to the motion for summary judgment (Dkt. 45), which prompted Safeco's motion to strike her late-filed response (Dkt. 53). For the reasons explained below, this Court will: (1) grant Bostock's motion to file a late response; (2) deny Safeco's motion to strike; and (3) deny Safeco's motion for summary judgment without prejudice.

**MEMORANDUM DECISION & ORDER - 1**

# FACTS

In March 2008, Bostock renewed a Homeowners Insurance Policy with Safeco on a home she owned in Sun Valley, Idaho. *See Aff. David Hager*, Dkt. 41-5. The annual premium on the one-year policy was $1,988. *Id.*

Around late November 2008, several months after this renewed policy was in effect, Bostock's elderly mother fell and broke her hip. Bostock traveled to Florida to care for her mother. *See Complaint*, at 1, Dkt. 1-2. Shortly afterward, on December 8, 2008, Safeco sent Bostock a notice that her December 2008 insurance policy payment had not been received. The notice stated that the policy would be cancelled if payment was not postmarked and mailed by January 12, 2009. *See Aff. Jerome Faulkner, Exhibit 1*, at 5, Dkt. 41-4. On January 20, 2009 Safeco sent an additional notice to Bostock, as well as her mortgage company, Aurora Loan Services, LLC, indicating that Bostock's insurance coverage had been cancelled for nonpayment. *Jan. 20,2009 Letter, Ex. 3 to Faulkner Dec.*, Dkt. 41-4, at 7. This letter informed Aurora that coverage would expire at 12:01 a.m. on February 14, 2009. *Id.*

Per the policy agreement, Safeco was required to provide Aurora notice of non-payment as the mortgage holder, and allow Aurora to maintain protection in the event of non-payment by Bostock. *See Aff. David Hanger*, at 31, Dkt. 41-5. Pending non-payment by either Bostock or Aurora, Aurora's coverage would have terminated on February 14, 2009. *See Aff. Jerome Faulkner, Exhibit 3*, at 7, Dkt. 41-4.

At some point before February 14, 2009, a loss occurred at the home. On February 11, 2009, Bostock's daughter, Mia Cherp, went by the home – which was

**MEMORANDUM DECISION & ORDER - 2**

vacant at the time – to check the thermostat. *See Aff. Mark Sebastian, Exhibit C (Recorded Statement of Mia Cherp*, at 3 (CF 143), Dkt. 41-3; *see also Pl's Second Response Br.* at 3, Dkt. 47. She discovered that a pipe had burst, which caused flooding in the interior of the home. Cherp immediately called her mother, and Bostock told her that her insurance coverage may have lapsed. Cherp told her mother to reinstate the policy and supplied a credit card number that her mother could use to make any necessary payments. Cherp then went back to dealing with the flooding house.

Meanwhile, with Cherp's credit card number in hand, one of Bostock's friends called Safeco.[1] She identified herself as Mia Cherp, used Cherp's credit card to reinstate the policy, and told the insurance company that there had not been any losses on the property. *See Aff. Jerry Faulkner, Exhibit 6, (CF 90)*, Dkt. 41-4.

Safeco inspected the home on February 18, 2009 and later informed Bostock that it was denying coverage because the policy had been canceled for non-payment on January 13, 2009 – before any damage had occurred to the home. *Aff. Jerry Faulkner, Exhibit 8 at 17,* Dkt. 41-8*; id. at Exhibit 7*, at 15*,* Dkt. 41-7.

Although Bostock's personal coverage had lapsed, her mortgage company, Aurora, evidently exercised its right to preserve coverage on the property prior to that coverage's expiration on February 14, 2009. *See Aff. David Hanger*, at 31, ¶ 12(d), Dkt. 41-5. Safeco ultimately paid Aurora "over $100,000 on the claim", and its payments to

---

[1] The record indicates that the caller was not actually Mia Cherp, but instead was an acquaintance of Bostock's who was helping handle the payment over the phone. *See Aff. Jerome Faulkner, Exhibit 6 (CF 90),* Dkt. 41-4; *see also Aff. Mark Sebastian, Exhibit B (CF 130)*, Dkt. 41-3 (Bostock admits the caller was not her daughter).

**MEMORANDUM DECISION & ORDER - 3**

Aurora "were based on actual invoice for the work done." *Aff. Jerry Faulkner*, ¶ 12–13, Dkt. 41.

Bostock, however, contends that she paid for some repairs to the home, and, further, that Safeco did not pay for personal property that was damaged or lost in the flood. *See Response,* Dkt. 44; *Compl.* Dkt. 1-2, at 2. Plaintiff alleges that Safeco's failure to reimburse her under the insurance policy is a breach of contract. *Id.*

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d

1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed.R.Civ.P. 56(e). In determining admissibility for summary judgment purposes, it is

**MEMORANDUM DECISION & ORDER - 5**

the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). Statements in a brief, unsupported by the record, cannot be used to create a factual dispute. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Circuit has "repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document. *Id.*

Finally, filings by pro se litigants are entitled to special deference and are not held to the standards of attorneys. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir.1987).

## ANALYSIS

**1.      Motion for Summary Judgment**

Safeco says Bostock's breach-of-contract claim fails because the insurance policy had been canceled, relieving it of the obligation to pay Bostock's claim. Safeco had the right to cancel the policy if Bostock failed to pay her premiums. The policy states: "When you have not paid the premium we may cancel at any time by notifying you at least 20 days before the date cancellation takes effect." *Enhanced Quality-Plus Homeowners Policy Declarations*, Aff. David Hager, Exhibit 1, at 38, Dkt. 41-5. This provision is in compliance with Idaho Code section 41-2401, which requires at least ten days' notice of a cancellation due to nonpayment. *See* I.C. § 41-2401(j).

**MEMORANDUM DECISION & ORDER - 6**

On December 8, 2008, Safeco sent a notice to Bostock indicating that her policy would be cancelled if she did not make a scheduled payment of $174.66 by January 12, 2009. *See Aff. Jerome Faulkner, Exhibit 1*, at 5, Dkt. 41-4. Bostock says she did not receive this notice, but only proof of mailing is required under both Idaho law and Bostock's insurance policy. *See Aff. Jerome Faulkner, Exhibit 1*, at 5, Dkt. 41-4. ("This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice."); I.C. § 41-2401(j) ("proof of mailing of notice of cancellation . . . shall be sufficient proof of notice.")

Bostock fares better with her next argument. She says the cancellation was not effective because as of December 8, 2008 – the date Safeco sent the missing-payment letter – she had not missed any payments. In fact, she says she had overpaid during the period leading up to December 2008. To support this assertion, Bostock submits copies of four checks, all made out to Safeco, in the following amounts:

| Date | Amount |
| --- | --- |
| Aug. 3, 2008 | $169.66 |
| Sept. 15, 2008 | $174.67 |
| Oct. 27, 2008 | $251.00 |
| Nov. 5, 2008 | $340.33 |
| **Total** | **$935.66** |

These checks raise more questions than they answer. Why are they in such odd amounts? Why aren't all the checks for around $169.66 (like the first, August check), since that is roughly the monthly premium? *See Enhanced Quality-Plus Homeowners*

*Policy Declarations*, *Aff. David Hager, Exhibit 1,* at 16, Dkt. 41-5 (March 2008–2009 premium bill total $1988, plus $4 service charge per installment if paying in installments). Do these checks show that Bostock was pre-paying monthly premiums on this policy? Or was she making up for past, missed payments? Did the insurance company receive these checks and credit Bostock for the payments? Were all these checks intended for the homeowners' policy, or was Bostock paying on other insurance policies she had with Safeco?[2]

It would seem that either party should be able to easily answer these questions simply by submitting a complete payment log on this policy. Yet neither has. Safeco relied solely on its December 8, 2008 notice to support its assertion that Bostock had failed to pay her premiums, while Bostock has come forward with evidence of just four payments.

On this record, if a jury drew inferences in Bostock's favor, it could conclude that Bostock was current on her homeowners' insurance premiums as of September 2008, and, further, that she began making extra payments in October 2008. Of course this is not the only inference that could be drawn. A jury might also infer that Bostock was submitting larger checks to make up for past missed payments. (In fact, the cover page of her policy, dated March 2008, indicates that Bostock would need to make up around $357.09 in monies owed the company. *See Feb. 13, 2008 Letter,* Dkt. 41-5 (insurance

---

[2] It appears that Bostock also had automobile insurance with Safeco at one point. *See Recorded Statement of Mia Cherp,* Dkt. 41-4, at CF93 (the insurance company representative informs the caller that "I show a cross-reference auto policy as well. And I'm showing that one as cancelled.")

**MEMORANDUM DECISION & ORDER - 8**

renewal letter states that "[a] $357.09 payment for the outstanding bill on your account must be postmarked by March 16, 2008 to prevent cancellation of the policies on your account.") The jury could also infer that Bostock was making payments on other insurance policies she held with Safeco.

The upshot is that there is a disputed issue of fact regarding whether Bostock had failed to pay her insurance premiums as of December 8, 2008, when the company sent the cancellation notice. Bostock has thus come forward with sufficient evidence to defeat summary judgment. The Court will therefore deny Safeco's motion, though it will do so without prejudice given the various problems with Bostock's brief.

**2.      Bostock's Late Response – Rule 6(b)(1)**

Tardiness is Bostock's first problem. Safeco filed its motion on March 30, 2016, which meant Bostock had until April 25, 2016 to file her response.[3] Dist. Idaho Loc. Civ. R. 7.1(c). On May 2, 2016 – a few days after this deadline passed – Bostock filed a motion asking for additional time. *See Plaintiff Request for Additional Time to Reply to The Opposing Party's Motion for Judgment or Dismissal,* Dkt. 45. She said she had been searching for a lawyer but had had no luck finding someone to represent her in this action. Then, on May 16, 2016, before the Court ruled on her request for an extension, Bostock filed her response. *See Plaintiff's "Dismissal of Motion for Summary*

---

[3] Bostock filed a brief with this Court on April, 19, 2016, entitled *My Day in Court to Dismiss,* yet this document does not directly respond to the summary-judgment motion. *See* Dkt. 44. Rather, it appears to be aimed at responding to discovery requests. Bostock obviously did not consider this to be her response, given that she later filed a motion asking for more time to respond to the motion for summary judgment.

**MEMORANDUM DECISION & ORDER - 9**

*Judgment,"* Dkt. 47. Bostock thus filed her response roughly three weeks after it was originally due.

The Court will construe Bostock's request for additional time under Federal Rule of Civil Procedure 6(b)(1). This rule provides:

> *(b)* *Extending Time*
>
> (1) *In General.* When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>
> (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
>
> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

"This rule, like all the Federal Rules of Civil Procedure, '[is] to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits.'" *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258-59 (9th Cir. 2010) (citation omitted); *see also* Fed. R. Civ. P. 1 ("[The Federal Rules] should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding.").

The Court finds excusable neglect based on Bostock's efforts to track down a lawyer. The Court also observes that Bostock ultimately did not seek an overly lengthy extension. The Court will therefore grant her Rule 6(b)(1) motion and deny Safeco's motion to strike the late pleading on the basis of timeliness. *See generally Ahanchian,* 624 F.3d at 1255 (observing that "district courts enjoy a wide latitude of discretion in case management, . . . circumscribed by the courts' overriding obligation to construe and

**MEMORANDUM DECISION & ORDER - 10**

administer the procedural rules so as 'to secure the just, speedy, and inexpensive determination of every action and proceeding.'") (quoting Fed. R. Civ. P. 1).

3.      **Safeco's Request for Sanctions – Rule 37(c)(1)**

The more troubling aspect of Bostock's response is that she waited until now to come forward with the four checks. She filed this lawsuit in August 2014 and then waited almost two years before producing the checks, and then only in response to a pending motion for summary judgment.[4] Bostock also failed to file formal, complete responses to Safeco's various discovery requests even after this Court entered an order compelling her to do so.

Understandably frustrated with this state of affairs, Safeco asks for sanctions under Rule 37(c)(1). Rule 37(c)(1) rule "forbid[s] the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). The rule provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

---

[4] That said, at least one of these checks should not come as a surprise to Safeco. When Safeco's investigator spoke to Bostock in February 2009 (shortly after the flood was discovered), Bostock repeatedly said she wasn't sure if she was behind on her payments. *See Recorded Statement,* Dkt. 41-3. And in the context of that discussion, Bostock alerted the representative to one of the four checks she now relies upon. *See id.* at CF136 (Bostock states, "here it is . . . [check number] 5247 for $251"). Bostock seemed to be suggesting that Safeco had not credited her for this payment.

**MEMORANDUM DECISION & ORDER - 11**

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

*Id.* The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless. *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008). Bostock has not offered any excuse for her failure to produce these checks earlier in this action, other than her generalized assertion that she has recently been attempting to find a lawyer. Sanctions are appropriate under these circumstances. The Court determines that the following sanction is appropriate:

1. Bostock may present evidence of these four checks in her effort to defeat summary judgment, but only on the following conditions:

2. Safeco may submit a supplemental brief in support of its motion for summary judgment within 60 days of this Order. *See* Fed. R. Civ. P. 56(e). Presumably, this submission will include a payment log and provide context regarding the four checks Bostock submitted.

3. If Safeco wishes to depose Bostock, or if it needs Bostock to produce additional documents to support this supplemental brief, the Court will allow such discovery. If Bostock does not make herself available for a deposition within a reasonable time, or if she does not timely respond to such additional discovery requests, Safeco shall inform the Court, at which point, after providing Bostock an opportunity to be respond in writing regarding any

alleged failure, the Court shall proceed to rule on the summary-judgment motion without considering the four checks mentioned above.

4. If this matter proceeds to trial, the Court will entertain Safeco's motion to inform the jury of Bostock's initial failure to produce the four checks.

5. **Bostock's Failure to File Formal Responses to Safeco's RFAs – Rule 36**

A third, related problem with Bostock's response is that during discovery, she did not file formal responses to Safeco's Requests for Admission (RFAs). Any competent lawyer knows that failing to respond to RFAs is deadly because the end result is that the RFAs are deemed admitted, Fed. R. Civ. P. 36(a)(3), and the matter at hand is "conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).

Safeco's RFA Nos. 13 and 14 – if admitted – gut Bostock's case. They ask Bostock to admit the following:

> No. 13: Please admit that your *Policy* had expired prior to the *incident* occurring.
>
> No. 14: Please admit that there was no coverage under the *Policy* for *your* or *your* losses due to or resulting from the *incident*."

Dkt. 41-3, at 8.

Bostock did not file formal responses to the RFAs. Nevertheless, in her many submissions made during the discovery process (which she often filed with the Court), Bostock continually denied that Safeco had the right to cancel her policy for non-payment. She repeatedly asserted that Safeco was wrongly denying coverage. Under

these circumstances, the Court will allow Bostock to contest the propriety of the alleged cancelation.

## ORDER

**IT IS ORDERED that:**

1) Safeco's Motion for Summary Judgment (Dkt. 41) is **DENIED WITHOUT PREJUDICE** for the reasons explained above. Safeco may file a supplemental brief and evidentiary materials in support of its motion within 60 days of this Order.

2) Bostock's Request for Additional Time (Dkt. 45) is **GRANTED.**

3) Safeco's Motion to Strike (Dkt. 53) is **DENIED.**

DATED: August 1, 2016

_____
B. Lynn Winmill
Chief Judge
United States District Court