UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BARBARA BOSTOCK,<br><br>        Plaintiff,<br><br>    v.<br><br>AURORA LOAN SERVICES, LLC, SAFECO INSURANCE CO. OF ILLINOIS, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and JOHN AND JANE DOES 1-10,<br><br>        Defendants. | Case No. 1:14-cv-00329-BLW<br><br>MEMORANDUM DECISION AND ORDER |

**I**
**INTRODUCTION**

Before the Court is Defendant Safeco Insurance Company of Illinois' Renewed Motion for Summary Judgment (Dkt. 55), as well as Plaintiff Barbara Bostock's motion for an extension of time to file an amended complaint. (Dkt. 61). Additionally, defendants have filed various motions to strike, including motions to strike Bostock's First Amended Complaint. *See* Dkts. 66, 68, 69, 77, 78. For the reasons explained

below, the Court will: (1) grant Safeco's renewed motion for summary judgment; (2) deny Bostock's motion for an extension of time in which to file an amended complaint; (3) grant the motions to strike the first amended complaint; and (4) grant in part and deny in part Safeco's other motions to strike.

# II
# PLAINTIFF'S MOTION FOR AN EXTENSION

The Court will first resolve Bostock's motion for an extension of time and then turn to the remaining motions.

**A.    Background**

Bostock is representing herself in this action.  In February 2014, she sued three defendants: (1) Aurora Loan Services, LLC, (2) Mortgage Electronic Registration System, Inc. (MERS), and (3) Safeco Insurance Company.  *See* Dkt. 1.  In March 2016, the Court granted Defendants Aurora and MERS' motion to dismiss the complaint against them.  The Court construed Bostock's complaint as alleging three claims against those defendants:  (1) attempted wrongful foreclosure; (2) intentional infliction of emotional distress; and (3) negligent infliction of emotional distress.  The Court dismissed the attempted wrongful foreclosure claim without leave to amend and dismissed the emotional distress claims with leave to amend.  Plaintiff was allowed 30 days in which to file an amended complaint.  *See Order,* Dkt. 40, at 9.

Bostock did not file an amended complaint within the allotted 30 days.  Instead, in October 2016 – over six months after the April 2016 deadline had passed and after Defendant Safeco had filed a second motion for summary judgment – Bostock asked for

an extension of time in which to file an amended complaint. *See Oct. 24, 2016 Request for Additional Time to File First Amended Complaint*, Dkt. 60. Then, in December 2016, before the Court ruled on her request for an extension, Bostock filed her First Amended Complaint. *See First Am. Compl.*, Dkt. 74. All defendants oppose Bostock's request for an extension and have moved to strike the late-filed First Amended Complaint.

**B.     Discussion**

Defendants MERS and Aurora analyze this motion under Federal Rule of Civil Procedure 6(b)(1)(B), which authorizes the Court to grant an extension after the original time for acting has expired "if the party failed to act because of excusable neglect." Defendant Safeco says the motion should be analyzed under Federal Rule of Civil Procedure 16(b), which addresses requests to amend the complaint when a scheduling order is in place.

Bostock cannot satisfy either standard. The more lenient, "excusable neglect" standard is forth in Rule 6(b), which provides:

> When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect.

Fed. R. Civ. 6(b)(1)(B). Generally, Rule 6(b)(1), "like all the Federal Rules of Civil Procedure, is to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits." *Ahanchian v. Xenon Pictures, Inc.,* 624 F.3d 1253, 1258-59 (9th Cir. 2010) (internal quotation marks, citation, and alteration omitted). More specifically, in determining whether neglect is excusable, the Court considers four

factors: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. U.S. Postal Serv.,* 231 F.3d 1220, 1223-24 (9th Cir. 2000).

Beginning with the second factor, an eight-month delay is lengthy, particularly in this relatively straightforward case, and allowing an amended complaint at this stage in the proceedings would obviously trigger even more delay.[1]

Regarding the reason for the delay, Bostock says she was late in filing an amended complaint (as well as in requesting an extension) "because of being ill, and not being represented by an attorney." Dkt. 60, at 7. She does not provide much detail, however, other than to say that she now has a paralegal assisting her, that she was in the emergency room in October 2016, and that she has been in the emergency room four times since November 2014. *Id.* In a supplemental filing, Bostock submitted a letter from a doctor, indicating that she was seen in an emergency room on February 20, 2016, June 5, 2016, and October 17, 2016. *See Nov. 3, 2016 Filing,* Dkt. 64.[2]

---

[1] Here, the Court measures the approximate eight-month delay as follows: The amended complaint was due in April 2016, but was not filed until December 2016. *See Mar. 16, 2016 Order,* Dkt. 40, at 9 (allowing plaintiff 30 days to file an amended complaint); *Dec. 30, 2016 First Amended Complaint,* Dkt. 74.

[2] Safeco moved to strike various health records Plaintiff Bostock submitted on November 3, 2016. *See Nov. 18, 2016 Safeco Motion to Strike Docket No. 64,* Dkt 68. Safeco argues that the documents are not signed, are not explicitly tethered to any particular motion, and violate various evidentiary rules. *Id.* at 1-2. Given that Bostock is representing herself in this action, the Court will
(Continued)

While the Court is usually amenable to granting extensions for health-related reasons, the party seeking the extension still must provide more specific information than Bostock has provided to justify an extension. Further, even assuming an extension would have been appropriate, the Court would not have granted an eight-month extension, particularly where Bostock filed many other documents during this same period. Specifically, between March 16, 2016, the date of the Court's order granting leave to amend, and December 30, 2016, the date Bostock filed her amended complaint, Bostock filed various documents with the Court, *see* Dkts. 42, 44, 45, 47, 57, 58, 60, 61, 64, 70, including a May 2, 2016 request for additional time to respond to Safeco's then-pending motion for summary judgment. *See Request for Additional Time to Reply*, Dkt. 45. This suggests that despite any medical issues, plaintiff could have timely filed an amended complaint, or, at a minimum, she could have moved for an extension of time much earlier. Instead, she remained silent on this point, white at the same time raising other issues with the Court. On this record, Bostock has failed to show a reasonable basis for her lengthy delay. *See generally* 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1165 (4th ed.) ("Generally, excusable neglect seems to require a

---

consider the November 3, 2016 filing as a supplement to her October 24, 2016 request for additional time to file an amended complaint. *See* Dkt. 60. Within that October 24, 2016 filing, Bostock indicated that "[t]he doctor is preparing a letter to me about my illness, and I would like to send it confidentially to you, Judge Winmill." Dkt. 60, at 7. While the Court has not determined the need to review any materials on an *ex parte* basis (and Bostock has not sought to seal any such records), the Court has considered Bostock's November 3, 2016 filing in resolving her October 24, 2016 motion. The Court will therefore deny Safeco's motion to strike the November 3, 2016 filing.

**MEMORANDUM DECISION AND ORDER - 5**

demonstration of good faith on the part of the party seeking an extension of time *and some reasonable basis for noncompliance within the time specified in the rules*.") (emphasis added).

The Court further finds that an eight-month delay would be prejudicial to defendants and unnecessarily delay resolution of this case. Most significantly, the discovery period has passed, as has the deadline for filing dispositive motions.

On these facts, even assuming Bostock acted in good faith, the Court cannot find excusable neglect. The Court will therefore deny Bostock's motion for an extension of time in which to file an amended complaint and grant the motions to strike the amended complaint.

## III
## SAFECO'S MOTION FOR SUMMARY JUDGMENT

The Court will next resolve Safeco's renewed motion for summary judgment. Bostock alleges that Safeco breached the terms of a homeowner's insurance policy by failing to pay for damages associated with a February 2009 house flood. As explained below, however, Safeco was not obligated to pay Bostock's claim under the policy because Safeco had canceled Bostock's coverage as of January 13, 2009. The Court will therefore grant summary judgment in Safeco's favor.

**A.     Relevant Facts**

Bostock resides in California, but for several years she owned a home in Sun Valley, Idaho. On February 11, 2009, Bostock's daughter stopped by the home and discovered ice and running water around the outside of the house and garage. Bostock

later learned that a pipe servicing a jacuzzi had burst and water had leaked inside the home, causing extensive damage.

On December 8, 2008, roughly two months before the flood was discovered, Safeco notified Bostock that unless she made a premium payment by January 12, 2009, her homeowner's insurance policy would be canceled. *See Non-Pay Warning Notice, Ex. 1 to Faulkner Dec.*, Dkt. 41-4 ("This is the last notice you will receive."). Bostock did not make any payment in response to that notice, and on January 20, 2009, Safeco sent Bostock a billing statement indicating that her policy had been "cancelled effective Jan 13, 2009 for non-payment." *See Ex. 2 to Faulkner Dec.,* Dkt. 41-4. Bostock did not make any payment in response to that notice, nor did she attempt to reinstate the policy until shortly after she learned of the flood. *See Ex Faulkner Dec.,* Ex 6, at CF90.

Before Safeco canceled Bostock's coverage under the policy, Bostock often paid her monthly premium late. The one-year policy period began with a March 2008 renewal. The renewal notice indicated that Bostock would need to pay $357.09 in arrearages on her account to prevent the policy from being canceled. *See id.* ("A $357.09 payment for the outstanding bill on your account must be postmarked by March 16, 2008 to prevent cancellation of the policies on your account."). Bostock paid the arrearages, and then continued to make monthly payments during most of 2008. These payments were typically posted after Safeco had sent a cancellation notice. Regardless of the late payments, however, Bostock paid in time to keep her coverage in place throughout 2008.

**MEMORANDUM DECISION AND ORDER - 7**

Unfortunately, around November and December 2008, Bostock was preoccupied with assisting her elderly mother, and she did not make any payment in response to the December 2008 cancellation notice. And, as already noted, when Safeco did not receive any payment in response to the December 2008 notice, it canceled Bostock's coverage under the policy, effective January 13, 2009.

On January 20, 2009, shortly after Bostock's coverage had been canceled, Safeco notified Aurora, the servicer on Bostock's mortgage, that Safeco was cancelling the policy for "nonpayment of premium." Dkt. 41-4, at 7. This notice stated that *Aurora's* interest in the policy, as a mortgagee, was cancelled, and, further, that "[c]overage will end at 12:01 a.m. standard time on February 14, 2009." *Id.* Ultimately, then, Bostock's coverage ended on January 13, 2009, and Aurora's coverage ended on February 14, 2009.[3]

**B.    Relevant Procedural History**

Safeco previously moved for summary judgment, arguing – as it does again in the pending, renewed motion – that it had properly canceled Bostock's insurance coverage for nonpayment of the premium. *See Motion Mem.*, Dkt. 41-1, at 2-3. In defending that first motion, Bostock submitted copies of four canceled checks (all made out to Safeco) that raised questions as to whether Bostock had, in fact, missed making payments on her

---

[3] As explained below, the insurance policy contained a standard mortgage clause, which effectively created a separate insurable interest for the mortgagee.

insurance policy. *See Aug. 1, 2016 Order,* Dkt. 54, at 7-9. Based on the questions raised by these four checks, the Court concluded that Bostock had come forward with sufficient evidence to defeat Safeco's motion for summary judgment. *Id.* at 9.

The Court denied Safeco's motion without prejudice, however, because Bostock had not produced the four checks during discovery. *See id.* at 11. Instead, she waited until she was facing Safeco's motion for summary judgment to produce the checks. In ruling on Safeco's Motion for sanctions under Federal Rule of Civil Procedure 37(c), the Court determined that it would allow Bostock to present evidence of the four checks to defend the summary judgment motion, but that it would also allow Safeco to submit a supplemental brief in support of its motion for summary judgment which could presumably include a payment log and provide context regarding the four checks Bostock had submitted. *See Aug. 1, 2016 Order,* Dkt. 54, at 12.

Safeco has now renewed its summary judgment motion, and that renewed motion is supported by a more complete payment log.

## C. The Governing Legal Standard

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or

defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux,* 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions,

answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed.R.Civ.P. 56(e). In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).

Statements in a brief, unsupported by the record, cannot be used to create a factual dispute. *Barnes v. Independent Auto. Dealers,* 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Circuit has "repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988). Authentication,

required by [Federal Rule of Evidence 901(a)](), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document. *Id.*

**D.     Analysis**

The payment records Safeco submitted establish that in December 2008, when Safeco sent a cancellation notice to Bostock, Bostock was behind on her premium payments. *See Hagglund Dec.* ¶¶ 4-6, Ex. A thereto. The insurance contract allows Safeco to cancel the policy, with at least 20 days' notice, if the insured has not paid the premium. *Insurance Policy, Ex. A to Hager Dec.*, ¶ 4.b.(1) ("When you have not paid the premium we may cancel at any time by notifying you at least 20 days before the date cancellation takes effect."). As detailed above, Safeco notified Bostock that her policy had canceled, effective January 13, 2009. Thus, the undisputed facts establish that Bostock was not insured as of February 11, 2009.

Bostock advances two key arguments in response. One argument relates to the payments she made to Safeco; the other relates to the fact that Aurora, as a mortgagee, remained covered until the policy even after Bostock's coverage had been canceled.

**1.  Cancellation of the Policy for Nonpayment**

Bostock first argues that Safeco could not properly cancel the insurance policy because she paid Safeco at least $2,326.17 between February 2008 and March 2009,

which is more than the $1,988 annual premium owing on the policy. *See Safeco Policy Renewal Notice,* Dkt. 58-1.

The problem with this argument is that Bostock is including amounts that were either paid on other policies or were paid outside the relevant time period.

For example, Bostock also includes payments made to Safeco *after* she learned of the flood, to reinstate the policy. *See* Dkt. 58-1. She also includes a $362.09 payment she made to Safeco in February 2008. Bostock made this payment after Safeco sent her a statement indicating that to renew her homeowner's policy, she would need to pay $357.09 in arrearages. *See Feb. 13, 2008 Letter from Safeco to Bostock, Ex to Hager Dec.*, Dkt. 41-5, at 4; *see also Reply*, Dkt. 59, at 3. Bostock paid the arrearages in February 2008.[4]

Bostock also includes in her tally a $251 payment she made to Safeco in October 2008. *See Oct. 27, 2008 Check No. 5247,* Dkt. 58-1, at 4. The handwritten information on the "memo" line of the check reads as follows: "Home 7226-1297968." *Id.* The referenced number is to Bostock's automobile policy with Safeco.[5] It is undisputed that in 2008 Safeco applied that payment to Bostock's automobile policy without any objection from Bostock. *See Ex. 2 to Hagglund Dec.,* Dkt. 55-3 (auto policy payment

---

[4] Bostock's check for $362.09 was applied as follows: $353.09 was applied to the arrearages and $9.00 were charge as fees (a $4 installment fee plus a $5 late fee).

[5] That policy was also canceled for nonpayment of premiums in January 2009. *See Ex. B. to Hagglund Dec.,* Dkt. 55-3.

log). Further, the amount of the check – $251 – does not logically correlate to any amounts then owing on Bostock's homeowners' policy. By contrast, $251 fits precisely with her premium payments on the auto policy as follows: The six-month premium on the auto policy is listed as $494. One half of the that $494 six-month premium on the auto policy is $247; and $247 plus the $4.00 installment fee is $251. *See id.*

On this factual record, evidence that Bostock made a $251 payment to Safeco in October 2008 does not create a genuine dispute as to a material issue of fact.

Finally, the Court notes that although Bostock did not receive permission to file a sur-reply, the Court, in its discretion, nevertheless considered Bostock's October 31, 2016 affidavit in resolving Safeco's renewed motion for summary judgment. *See Oct. 31, 2016 Affidavit of Barbara Bostock Submitted to Counter the Reply of Safeco Insurance Co.*, Dkt. 61. (Safeco's motion for summary judgment was fully briefed on October 12, 2016; Bostock submitted a sur-reply on October 31, 2016).

In this affidavit, Bostock suggests that she was not behind on her premiums at the beginning of 2008 after all. *See id.* ¶ 5 ("They are going to have a difficult time explaining an alleged unpaid balance in 2008 when you take into consideration my 2006 and 2007 payments.").

There are at least two problems with this argument.

First, Bostock has not supplied any payment-specific information for 2006 or 2007. Rather, she has only generally denied being behind on her payments. This is not sufficient to create a genuine dispute about a material issue of fact in the face of Safeco's

payment records for 2008, which include a February 2008 billing statement indicating that Bostock had an outstanding balance on her account.

Second, to the extent Bostock is asking for additional time to come forward with records regarding the 2006 and 2007 payments, the Court will deny any such request. Bostock filed this action in 2014, and Safeco has consistently maintained that Bostock's insurance policy was canceled for nonpayment. Bostock has thus had more than three years to demonstrate that she was current on her payments.

### 2. The Mortgage Clause

In addition to arguing that she was not behind on her premiums, Bostock argues that she remained covered under her homeowner's policy as of February 14, 2009 because Defendant Aurora was covered on that date. To support this argument, she cites the cancellation notice Safeco sent to Aurora, on January 20, 2009, which states that Aurora's interest in the policy, as a mortgagee, was cancelled, and, further, that "[c]overage will end at 12:01 a.m. standard time on February 14, 2009." Dkt. 41-4, at 7.

The starting point for this argument is Paragraph 12.d. of the insurance contract, which contains a "Mortgage Clause." *Insurance Policy, Ex. A to Hagglund Dec.,* ¶ 12.d.

To determine whether Bostock has any remaining insured interest, the Court must determine whether the mortgage clause contained in Bostock's insurance policy is a standard or simple mortgage clause.

A standard, or union, mortgage clause "creates an independent contract of insurance for the mortgagee's separate benefit, engrafted upon the main contract of

insurance contained in the policy itself, which is rendered certain and understood by reference to the policy which makes it complete." 4 *Couch on Insurance* 3d § 65:32 (footnote citations omitted). The purpose of a standard mortgage clause is to protect the interests of the mortgagee from acts or omission amounting to default by the insured. *See U.S. v. Commercial Union Ins. Cos.*, 821 F.2d 164, 166 (2d Cir. 1987). The standard mortgage clause "gives the mortgagee an insured interest that the insured does not have." *Id.*

In contrast, a simple, or loss-payee, clause does not create a separate contract with the insured. Under a simple clause, the mortgagee has no more rights than that of the insured. *See Young v. Seven Bar Flying Serv., Inc.*, 685 P.2d 953, 956 (1984).

The Court must look at the language of the clause to determine what type of mortgage clause it is. "An agreement in a policy insuring a mortgagor and containing an open-mortgage clause *not to cancel the policy without notice to the mortgagee*, effects a contract of insurance directly with the latter, and is, in effect, a union [or standard] mortgage clause." 4 *Couch on Insurance* 3d, §§ 65:13 to 65:16 (emphasis added).

The mortgage clause in Bostock's policy is a standard mortgage clause. It contains language signifying that notice is required to the mortgagee before cancellation and is in effect a standard mortgage clause. In addition, the clause states that an invalid claim by

the mortgagor does not prohibit a valid claim by the mortgagee. [6] This language shows that it is a distinct and separate contract. Therefore, because the mortgage clause creates a separate contract with Aurora, the notice given to Aurora is not evidence that Bostock's policy was still in effect on February 11, 2009 when the loss occurred.

Additionally, the parties have not cited any relevant authorities on point, but other courts have held that an insurance company's failure to give proper notice to a mortgagee is a defense to cancellation of the policy *available only to the mortgagee – not the insured.*[7] *See generally* §17 Williston on Contracts § 49:135 (4th ed.) (discussing notice of cancellation of insurance contracts, and in particular, notice to mortgagees and secured parties). Here, the undisputed facts establish that Bostock failed to timely pay her insurance premium, and Safeco was thus justified in canceling the policy. The fact that *Aurora's* interest did not terminate until February 14, 2009 is not a defense available to Bostock.

---

[6] "If we deny your claim, that denial shall not apply to a valid claim of the mortgagee . . ." *Insurance Policy, Ex. A to Hagglund Dec.,* ¶ 12.d.

[7] *See*, e.g., *Ellegood v. Am. States Ins. Co.*, 638 N.E.2d 1193 (Ill. App. Ct. 1994) ("the insurer's failure to notify the third-party lienholders did not affect the proper notice given to the insured"); *Bryce v. St. Paul Fire & Marine Ins. Co.*, 783 P.2d 246, 247 (Ariz. Ct. App. 1989) ("Failure to give proper notice to a mortgagee is a defense to cancellation of a policy available to that mortgagee. However, that defense is not available to the insured.") (citing *Szymczak v. Midwest Premium Fin. Co.*, 483 N.E.2d 851, 855–56 (Ohio Ct. App. 1984)); *Western Exp. Inc. v. Interested Underwriters at Lloyd's, London*, 942 S.W.2d 542, 544 (Tenn. Ct. App. 1996) (Although statutory authority "might provide a defense to cancellation for the lienholders [,] ... the failure to notify the lienholders d[oes] not provide a defense to the insured."); *Wisniewski v. State Farm Gen. Ins. Co.*, 609 P.2d 456, 458 (Wash Ct. App. 1980) (A statutory notice of cancellation of a fire-insurance policy mailed to the insureds was effective as to them, even though the insurer did not mail notice of cancellation to the lienholder.).

For all these reasons, the Court will grant Safeco's motion for summary judgment.

## IV

## SAFECO'S RULE 11 MOTION

Lastly, the Court will address Safeco's Rule 11 motion, which deals with statements Bostock made about Safeco's attorney, Mark Sebastian. (Dkt. 66).

In an October 21, 2016 affidavit (filed October 24, 2016 as Dkt. 60), Bostock made the following statement:

> How is it our government has not kept the public a little safer when it comes to banking and lending including owning a home? This is our American Dream. Yet, greed and corruption in big organizations ruins this dream. I am not an attorney. How am I supposed to receive justice without an attorney? *Think about this. MARK D. SEBASTIAN has twisted facts and made false statements that are all over the board. This has kept me from being able to tell my facts to the Court.* If this is now our legal system, we need to work on improving it. We need to work on bringing God back into the courtroom. I was told the other day by an attorney that we no longer swear to "tell the truth, and nothing but the truth, so help me God" with our hand on the Bible"

Dkt. 60 ¶ 12. Safeco says the italicized portion of this statement violates Rule 11(b) because, among other things, Bostock failed to offer evidence "to support her defamatory comments regarding the integrity of Safeco's counsel, . . . ." *Motion to Strike*, Dkt. 66, at 3. Safeco further stated that it "hereby provides notice that it intends on filing a Motion for Sanctions as permitted by F.R.C.P. 11(c)(2)." *Id.*

Rule 11(c)(2) requires litigants to serve any planned Rule 11 motion for sanctions – which could feasibly include a motion to strike portions of an affidavit – on the opposing party 21 days before filing such a motion with the Court. This 21-day "safe

harbor" period gives the litigant a chance to withdraw the offending filing. Here, Safeco's November 17, 2016 filing was apparently meant to serve as this 21-day notice that a Rule 11 motion for sanction would be forthcoming. Ultimately, however, Safeco did not file the planned motion for sanctions. Accordingly, the Court will moot the pending motion to strike.

# ORDER

**IT IS ORDERED that:**

1. Defendant Safeco of Illinois' Renewed Motion for Summary Judgment (Dkt. 55) is **GRANTED.** The Court will enter judgment separately.

2. Plaintiff's Request for Additional Time to File a First Amended Complaint (Dkt. 60) is **DENIED.**

3. Safeco's Motion to Strike Portions of Barbara Bostock's Affidavit Explaining Why Aurora Should Be Held Civilly Liable (Dkt. 66) is **DEEMED MOOT.**

4. Safeco's Motion to Strike Docket No. 64 (Dkt. 68) is **DENIED.**

5. Safeco's Motion to Strike Docket No. 61 (Dkt. 69) is **DENIED.**

6. The Court has construed the document filed at Docket No. 71 as a supplemental brief in support of Plaintiff's Request for Additional Time to File a First Amended Complaint (Dkt. 60). Accordingly, the Clerk is directed to **ADMINISTRATIVELY TERMINATE** Docket Entry 71.

7. Defendant Safeco's Motion to Strike Amended Complaint (Dkt. 77) is **GRANTED.**

8. Defendants Aurora and MERS' Motion to Strike Amended Complaint (Dkt. 78) is **GRANTED.**



DATED: July 28, 2017

_____
B. Lynn Winmill
Chief Judge
United States District Court